| | | |
|---|---|---|
| WILLIAM G. BOLES and<br>SANDRA R. BOLES, | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | |
| U.S. DEPARTMENT OF THE<br>INTERIOR, FEDERAL FISH &<br>WILDLIFE SERVICE, and HARRIS<br>NECK WILDLIFE REFUGE, | : | |
| Defendants. | : | NO. CV207-87 |

## ORDER

Plaintiffs, William G. Boles and Sandra R. Boles, filed the above-captioned case against Defendants, the U.S. Department of the Interior, the Federal Fish and Wildlife Service ("FWS"), and Harris Neck Wildlife Refuge, over a property dispute between the parties. Presently before the Court is Defendants' motion to dismiss. Because the statute of limitations has run on Plaintiffs' claim, the motion will be **GRANTED**.

## BACKGROUND

The Boles own a parcel of real property adjacent to the Harris Neck Wildlife Refuge. Harris Neck is a unit of the

National Wildlife Refuge System and is managed by the Fish and Wildlife Service, a bureau of the United States Department of the Interior. Harris Neck is located in McIntosh County, Georgia.

Plaintiffs allege that they have a right to connect a private driveway from their property in the Spring Cove Plantation subdivision to an adjoining road (the "Disputed Road"). The Disputed Road is identified in various documents and by different persons as County Road 131, County Road 29, State Highway 131, Harris Neck Road, Barbour River Road, and Refuge Road. The ownership of this road is disputed, with the parties suggesting that it is owned either by the federal, state, or county government. The United States has denied Plaintiffs access to the road to connect a driveway, based on its assertion that the road is part of Harris Neck.

The land now comprising Harris Neck was originally acquired through a series of condemnation proceedings during World War II. The Army wanted the land to use as an airfield, and on July 6, 1942, the federal government instituted a condemnation proceeding in this Court to effect that goal. According to Defendants, on September 1, 1942, the McIntosh County Board of Commissioners discontinued the county roads in Harris Neck Airfield. On November 25, 1944,

final judgment was entered, and the federal government obtained title to the land. The legal description describes the southern boundary of the tract through a surveyor's metes and bounds description, and not by reference to any then-existing or proposed road, highway, or right of way.

On June 24, 1948, the federal government transferred the Harris Neck Airfield property back to McIntosh County, on the condition that the county operate an airfield on the land. On April 14, 1961, the federal government recovered the property because the county failed to operate the airfield. In 1962, jurisdiction over the land was transferred to the FWS.[1] Defendants argue that it is unclear when the Disputed Road was actually constructed, but concede that it was a gravel road until late 2000 or early 2001. At that time, the FWS used a grant from the Federal Highway Administration ("FHWA") to pave the road.

While the Disputed Road was a gravel road, McIntosh County would periodically grade the road. During the course of the paving project, the FHWA contacted McIntosh County for

---

[1] The Boles have intimated that they dispute the federal government's recitation of the title history with respect to the Harris Neck Wildlife Refuge, but state that these matters are immaterial to the present motion.

3

permission to connect the Disputed Road to an adjoining county road, and advised that the Disputed Road no longer required grading.

In August 2005, the Boles purchased the western half of Lot 7 in the Spring Cove Plantation subdivision. According to the Boles, the legal description in their warranty deed specifies that the northern boundary of their lot is State Highway 131. The Boles began constructing a residence, and they have access to and from their property by way of an easement on an adjacent neighbor's lot. Nonetheless, the Boles desire to access their property via the Disputed Road for convenience instead.

The Court has jurisdiction over this controversy under the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a (2008). Although Plaintiffs did not invoke the QTA in their pro se complaint, construing the complaint liberally, the government filed its motion to dismiss presuming that Plaintiffs assert a claim for relief pursuant to the QTA. That is a fair assumption, because the Supreme Court has stated that "Congress intended the QTA to provide the exclusive means by which adverse claimants could challenge the United States' title to real property." Block v. North Dakota, 461 U.S. 273, 286 (1983), superceded on other grounds by 28 U.S.C. §

4

2409a(g) (2008).

## MOTION TO DISMISS STANDARD UNDER RULE 12(b)(1)

Defendants make a factual attack on the Court's subject matter jurisdiction.

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)(quoting Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981)).[2]

Jurisdiction "must be demonstrated not supposed." Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1273 (11th Cir. 2000). When a plaintiff's jurisdictional allegations are challenged, he bears the burden of supporting his "allegations by competent proof." Id.; McNutt v. General

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

5

Motors Acceptance Corp., 298 U.S. 178, 189 (1936) (requiring proof by a preponderance of the evidence). In short, where the Court's jurisdiction is challenged pursuant to Rule 12(b)(1), the Court is not confined to the pleadings, but may consider the evidence of record to determine its power to hear the case.

**DISCUSSION**

The government argues that the complaint should be dismissed for lack of jurisdiction because it is time-barred under the QTA's twelve year statute of limitations. Defendants assert that the federal government has expressly preserved its sovereign immunity to suits that are barred by the limitations period.

> Any civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

28 U.S.C. § 2409a(g) (2008).

The government argues that the Boles' claim was triggered by October 29, 1987, if not sooner, which is more than nineteen years before the Boles filed their complaint

6

on July 25, 2007. After the Boles brought this dispute to their attention, Defendants commissioned a title examination of the Boles' property by Brunswick lawyer Donald Napier. Napier's examination revealed that the deed records show a direct and unbroken chain of title from Gene Slivka to the Boles. Consequently, Slivka is a predecessor in interest of the Boles within the meaning of § 2409a(g).

In 1987, Slivka owned a substantial tract of property on the south side of the Disputed Road, a portion of which had earlier been subdivided and later conveyed to Eagle Neck Development Company, and marketed as Spring Cove Plantation subdivision. That year, Slivka hired Brunswick lawyer John Gilbert to engage the United States Department of Interior in an effort to declare that the Disputed Road was a public road, which would have given Slivka access to another adjoining real estate development that he owned called Gould's Landing. On October 29, 1987, Gilbert wrote a letter to John P. Davis, a Department of Interior official, which acknowledged the United States' assertion that the Disputed Road was federal property, and part of the Harris Neck Wildlife Refuge. Dkt. No. 18, Ex. J. Other correspondence between Slivka's lawyer and officials with the Department of the Interior in late 1987 and early 1988 also put Slivka on

AO 72A
(Rev. 8/82)

notice that the Government asserted the exclusive right to use the road and to place conditions on public access to the road. Dkt. No. 18, Exs. K-P.

"[T]he words 'should have known' in section 2409a. . . impart a test of reasonableness." California ex rel. State Land Comm'n v. Yuba Goldfields, Inc., 752 F.2d 393, 396 (9th Cir. 1985). The question is whether the United States' actions would have alerted a reasonable landowner that the government claimed an interest in the land. Shultz v. Dept. of Army, 886 F.2d 1157, 1160 (9th Cir. 1989). Here, the federal government sent several letters to that effect to Slivka's lawyer, and the Forest Service barricaded the Disputed Road as well, indicating that the government claimed exclusive ownership of the road and the right to use it, and to dictate the extent to which the public was allowed access to the road. Skranak v. Castenada, 425 F.3d 1213, 1216-17 (9th Cir. 2005); Michel v. United States, 65 F.3d 130, 131-32 (9th Cir. 1995).

As a result, the Boles' complaint is time-barred because it was filed more than twelve years after the Boles' predecessor in interest, Slivka, knew or should have known of the United States' claim to the Disputed Road. The Court

AO 72A
(Rev. 8/82)

has no jurisdiction to consider the merits of the case.³ Block, 461 U.S. at 292.⁴

**CONCLUSION**

For the reasons described above, the Defendants' motion to dismiss is **GRANTED**. Dkt. No. 18. The Clerk shall enter judgment accordingly.

**SO ORDERED**, this __9th__ day of June, 2008.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

3

Although the Boles do not assert third party standing to litigate the rights of McIntosh County or the State of Georgia to the disputed road, it does not appear that Plaintiffs could satisfy the requirements to maintain the suit on those grounds. Most glaringly, there is no basis on which the Court can conclude that either the state or local government are hindered from filing suit to represent their own interests. Singleton v. Wulff, 428 U.S. 106, 113-14 (1976).

4

Although the Boles do not argue that the statute was tolled until they purchased the land in 2005, such an argument is without merit.

> [T]he QTA asks when it was reasonable for plaintiffs to know of the United States' claim, not their own claim. This distinction is deliberate and reflects "a clear congressional judgment that the national public interest requires barring stale challenges to the United States' claims to real property, whatever the merit of those challenges."

Saylor v. United States, 315 F.3d 664, 670-71 (6th Cir. 2003)(quoting United States v. Mottaz, 476 U.S. 834, 851 (1986)).